NUMBER 13-09-184-CV

 

                                 COURT
OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

                                                                                                                     


 

YOLANDA HERNANDEZ, INDIVIDUALLY                      

AND ON
BEHALF OF THE ESTATE OF

PEDRO FLORES, ET AL.,                                                  
Appellants,                                       

        

v. 

 

EL PASO PRODUCTION COMPANY N/K/A

EL PASO E&P COMPANY, L.P.,                   
              Appellee.

                                                                                                                     


 

On appeal from the 139th District
Court 

                                       of
Hidalgo County, Texas.

                                                                   
                                                  

 

                               MEMORANDUM
OPINION

 

                  Before
Justices Rodriguez, Benavides, and Vela

                            Memorandum
Opinion by Justice Vela

 








This appeal
is from a trial court order granting summary judgment for appellee, El Paso
Production Company n/k/a El Paso E&P Company, L.P., and against appellants,
Yolanda Hernandez, individually and on behalf of the Estate of Pedro Flores,
Juan Flores, Sigifredo Flores, Desiderio Flores and David Flores (collectively,
Athe Hernandezes@), in a suit brought to quiet title with respect to
a mineral estate.  The Hernandezes urge that the trial court erred by:  (1)
construing the deed at issue to convey more than a one-sixteenth mineral
interest in the subject property, (2) construing the deed at issue based on the
Aestate misconception@ theory, (3)
granting El Paso=s motion for summary judgment based on subsequent
extrinsic evidence, (4) granting El Paso=s summary judgment motion based on a title opinion,
(5) granting summary judgment that the Hernandezes take nothing on their
trespass cause of action; and (6) denying their motion for partial summary
judgment because they are the title owners to a seven-sixteenth interest in the
mineral estate in and under the property at issue.  The Hernandezes also argue
that there was an issue of fact precluding summary judgment on the claim of surface
damage and that the award of attorney=s fees was improper.  We affirm, in part, and
reverse and remand, in part.

I. Procedural
Background








The Hernandezes
filed suit to quiet title asserting, at the time the pleadings initially were
filed, that they Aare the owners of the surface and one-half of the
mineral estate of a certain tract of land located in Hidalgo and Starr
Counties, Texas. . . .@  In their second amended pleadings, the Hernandezes
allege that they owned Aat least 1/2 of the mineral estate.@  But, in their fourth amended petition they claim they own 7/8 of the
mineral interests.  The Hernandezes also added causes of action for breach of
fiduciary duty, fraud, constructive fraud, breach of the duty of good faith and
fair dealing, conversion, negligence, gross negligence, trespass, and damage to
the surface estate.  El Paso filed a plea in abatement and answered the
lawsuit.  Later, J.F. Ewers, Jr., J.F. Ewers, III., Michelle Craig, David A.
Ewers, Alan D. Ewers, and William B. Ewers, (collectively, the “Ewers”) filed a
plea in intervention, alleging that they own mineral interests in the tract of
property set forth in the Hernandezes’ petition.  The Hernandezes
counterclaimed to quiet title and sought a declaration that they were the
owners of the surface and mineral interests.  

The Hernandezes
sought summary judgment on the title claim.  Thereafter, El Paso also sought
summary judgment, alleging that the Hernandezes had no interest in the mineral
estate and El Paso moved for summary judgment on the remaining claims.  El Paso
filed a no-evidence motion for summary judgment on most of the remaining
claims.  The trial court=s order granted El Paso=s no-evidence and traditional motions and awarded it attorney=s fees pursuant to chapter 37 of the Texas Civil Practice &
Remedies Code.  Tex. Civ. Prac. &
Rem. Code Ann. ' 37.009 (Vernon 2008).  

This Court
abated the case on October 20, 2010 to clarify whether the trial court intended
to dispose of all parties and claims on its judgment of January 16, 2008.  The
Court noted that the intervention and counterclaim were not specifically
disposed of in the judgment.  The judgment is entitled “Final Judgment” and
orders that the Hernandezes take nothing by their suit.  Upon remand, the trial
court issued an order stating that it intended the judgment to be final because
the intervention and counterclaim were made moot by the order granting summary judgment. 
After reviewing the motion for summary judgment and pleadings, we agree that
the trial court’s order of January 16, 2008 made the intervention and
counterclaim moot and is final.

 

II. The
Mineral Interests

The parties
in this case primarily dispute the interpretation of a mineral deed that was
recorded in 1932 from Romulo Salinas and his wife, Nicanora Rodriguez, (ASalinas@) to C. J. Bolleter (the ABolleter deed@).  The parties agree that the Bolleter deed is
unambiguous, but urge alternate interpretations.  The Hernandezes claim that
the deed conveyed a one-sixteenth mineral interest to Bolleter and that the Hernandezes,
as the heirs of Salinas, own an undivided seven-sixteenth=s of the mineral interest in and under the subject property.  El Paso
was the assignee of mineral interests in the subject land.  It claims that
Romulo and Nicanora Salinas conveyed all of their mineral interest in the
subject land during their lifetime and, while the Hernandezes own the surface
estate, they do not own any of the mineral interests.  The original deed, which
is the source of the controversy, granted a:

                                    One
sixteenth interest in and to all of the oil, gas and other minerals in and
under and that may be produced from the following described lands situated in
Hidalgo County, Texas. . . .                            

 








And said above described
lands being now under an oil and gas lease originally executed in favor of La
Joya Oil and Gas Co. and now held by La Joya Oil and Gas Co., it is understood
and agreed that this sale is made subject to said lease, but covers and
includes one half (1/2) of all the oil royalty and gas rental or royalty due
and to be paid under the term of said lease.  

 

It is agreed and understood
that None of the money rentals which may be paid to extend the term within
which a well may be begun under the terms of said lease is to be paid to the
said C. J. Bolleter, and in the event that the said above described lease for
any reason becomes cancelled or forfeited, then and in that event, the lease
interests and all future rentals on said land, for oil, gas and mineral
privileges shall be owned jointly by C. J. Bolleter and Grantors herein, Romulo
Salinas & Nicanor (sic) Rodriguez each owning one half 1/2 of Royalty same
being 1/2 of 1/8 or 1/16 interest in all oil, gas and other minerals in and
upon said land under the present lease or any future lease on said land
together with 1/2 one half interest in all future rents.   

 

There are
also additional deeds and information in the chain of title that are necessary
to discuss in our disposition of this case.  One deed, dated May 26, 1932, from
C. J. Bolleter et. ux. to J. E. Wilkins, conveyed 1/4 of his mineral interest
in the subject land to Wilkins.  Another, dated September 17, 1932, conveyed a
1/4 interest from C. J. Bolleter and Annie C. Bolleter to Theresa C. Gallucci. 
A third deed, dated March 10, 1934, conveyed an undivided 1/2 mineral interest
in the subject land to R. H. Woods.  

In 1934,
Romulo and Nicanora Salinas executed an affidavit averring that they had
conveyed, sold, assigned or transferred:

all their
right, title and interest in an to all minerals. . ., and all rights accruing
by virtue thereof on top and underneath the surface of the hereinafter
described property, one-half of such mineral rights being sold to R. H. Woods,
for a valuable consideration, of Hidalgo County, Texas; and one-fourth to Ed
Wilkins, of Hidalgo County, Texas; and one-fourth to Theresa Galluci, of
Hidalgo County, Texas. . . .

            








In 2001, an
oil, gas and mineral lease from Pedro Flores to Thorp Petroleum Corporation was
recorded purporting to cover mineral interests with respect to the same land. 
Flores and his estate acquired his interest in the land from the heirs of
Romulo and Nicanora Salinas by warranty deed dated January 22, 1953.                                      

III.  Standard of Review








            Whether the
motion for summary judgment was brought pursuant to no-evidence or traditional
grounds determines our standard of review.  See Tex. R. Civ. P. 166a(c), (i); see also Ortega v. City
Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.).  A
no-evidence summary judgment equates to a pre-trial directed verdict.  Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Ortega, 97
S.W.3d at 772.  We review the evidence presented by the motion and the response
in the light most favorable to the party against whom the summary judgment was
rendered, crediting evidence favorable to a party if reasonable jurors could,
and disregarding contrary evidence unless reasonable jurors could not.  Mack
Trucks Inc., 206 S.W.3d at 582. We utilize a de novo standard in reviewing
the trial court's granting of a traditional motion for summary judgment.  See
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003); Branton v. Wood, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi
2003, no pet.).  We must determine whether the movant met its burden to
establish that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); see Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678 (Tex. 1979).  In a traditional summary judgment, the movant bears the
burden of proof, and all doubts about the existence of a genuine issue of
material fact are resolved against the movant.  See Sw. Elec. Power Co.,
73 S.W.3d at 215.  We take as true all evidence favorable to the non-movant,
and we indulge every reasonable inference and resolve any doubts in the
non-movant's favor.  See Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).

We affirm a
traditional summary judgment only if the record establishes that the movant has
negated at least one essential element of the plaintiff's causes of action or
has conclusively proved its defense as a matter of law.  IHS Cedars
Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex.
2004); see Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997);
Clear Creek Basin Auth., 589 S.W.2d at 678.  When reasonable people
could not differ as to the conclusion to be drawn from the evidence, the matter
is conclusively established.  City of Keller v. Wilson, 168 S.W.3d 802,
816 (Tex. 2005).  Once the movant has produced sufficient evidence to establish
its right to summary judgment, the burden to produce competent controverting
evidence raising a fact issue with regard to the challenged element shifts to
the non-movant.  Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999); see Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995).  When the trial court's judgment does not specify which of several
proposed grounds was dispositive, we affirm on any ground offered that has
merit and was preserved for review.  See Joe v. Two Thirty Nine J.V.,
145 S.W.3d 150, 157 (Tex. 2004).

IV.  Analysis








We first
address the Hernandezes= issue that the trial court erred in granting
summary judgment because the trial court erred in construing the Bolleter Deed
to convey more than a one-sixteenth mineral interest.  The Hernandezes
primarily argue that the only applicable clause we should consider is the
granting clause.  El Paso argues that we need to harmonize the language in the
entire deed.  We agree that the law clearly requires us to go beyond the
granting clause in our review and we must examine all three clauses of the
deed. 

In
construing the meaning of a deed, our duty is to ascertain the intent of the
parties as set forth within the four corners of the document.  Luckel v.
White, 819 S.W.2d 459, 461 (Tex. 1991).  The court, in Luckel,
rejected the notion that the granting clause prevails.  Id. at 461.  We
examine the entire writing in an effort to harmonize and effectuate all
provisions in the agreement, even if different parts appear inconsistent or
contradictory.  Id. at 462.  Each word and phrase should be given its
plain, grammatical meaning unless doing so would defeat the parties= intent.  Moon Royalty, LLC v. Boldrick Partners, 244 S.W.3d
391, 394 (Tex. App.–Eastland 2007, no pet.).  A deed may be either ambiguous or
unambiguous; such determination is a question of law.  Friendswood Dev. Co.
v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996).  Neither party here
claims that the deed at issue is ambiguous.  








The deed at
issue in this case has different fractions appearing within the same
instrument.  This common occurrence in older oil and gas deeds has been a
source of problems over the years.  See Concord Oil Co. v. Pennzoil
Exploration & Prod. Co., 966 S.W.2d 451, 452 (Tex. 1998).  The form of
the deed at issue here was a three-paragraph deed, apparently commonly used in
the 1930s, that included:  (1) a Agranting@ clause; (2) a Asubject to@ clause; and (3) a Afuture lease@ clause.  See Richard F. Brown, Oil, Gas and Mineral Law,
60 SMU L. Rev. 1189, 1191 (2007). 
In the 1930s, when the Athree grant@ clauses were commonly used, Aroyalties were almost always one-eighth, and it would be a very unusual
and very creative grantor who actually intended two separate grants of
differing interest.@  See id. at 1194.  The granting clause is
similar to other real property conveyances; the subject-to clause explains that
the conveyance is subject to an existing lease; and the future lease clause
provides for ownership rights after the existing lease expires.  Laura H.
Burney, The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed
Construction, 34 S. Tex. L. Rev. 73,
86 (1993).  This deed form was developed to make a single conveyance of a
fractional mineral interest and appurtenant rights.  Id.  According to
Burney, most leases provided for a 1/8 royalty, but drafters incorrectly
perceived the estate to be a fee simple determinable with 7/8 of the mineral
interest lying with the lessee.  Id. at 88.  AAlthough the lessor only retains a 1/8 royalty interest, the lessor
still has the possibility of a reverter in the entire mineral estate.@  Id.  AFor example, a lessor who has leased the entire
mineral estate, but desires to lease-one half of the minerals, would assume
that he owned 1/8 of the minerals due to the existing lease.  Therefore, the
lessor would use the fraction 1/16, or a double fraction, 1/2 of 1/8, to convey
1/2 of what he perceived he owned.@  Id. at 89.  The Texas Supreme Court has
taken judicial notice that the Aprevailing royalty in private oil and gas leases in
the 1930s was a 1/8 royalty.@  Concord, 966 S.W.2d at 459-60. 

In their
text on Texas oil and gas law, Ernest E. Smith and Jacqueline Lane Weaver
explain these types of 1930s deeds, stating:  Aa person
purchasing an undivided 1/2 interest in lessor=s land should
receive a deed conveying 1/16 of the oil and gas beneath the tract but covering
and including 1/2 of all rents and royalties payable under the outstanding oil
and gas lease to which the grant was made subject.@  Ernest E. Smith & Jacqueline Lane Weaver, Texas Law of Oil and
Gas, ' 3.8 A.2 (2d edition Rev. 2007).








In Concord
Oil, the Texas Supreme Court considered a deed similar to the one at issue
in this case, with differing fractions in the various clauses of the deed.  966
S.W.2d at 453.  The court reaffirmed that the primary objective in construing
mineral deeds was to determine the intent of the parties.  Id. at 454. 
The court noted that when it had considered cases in the past with
inconsistencies between the fraction in the granting clause and those in other
clauses, it was evident that the grantor had conveyed a larger interest than
the granting clause indicated.  Id. at 455.  The court noted that in Tipps
v. Bodine, 101 S.W.2d 1076 (Tex. App.–Texarkana 1937, writ ref=d), the granting clause granted a 1/16 interest in the minerals.  Yet,
the other clauses effectively conveyed a larger fraction.  Id.  The Tipps
court held that the conveyance was actually a 1/2 interest in the minerals even
though the granting clause contained the fraction A1/16.@  Id.  The Concord court also noted
that the facts in Garrett v. Dils Co., 299 S.W.2d 904 (Tex. 1957), were
similar to Tipps and resulted in a 1/8 interest in the minerals, rather
than a 1/64 interest, as stated in the granting clause.  Id.  

Here, the
Hernandezes want us to rely upon only the granting clause, granting AOne sixteenth interest in and to all of the oil, gas and other
minerals.@  But, the law requires us to look at all three clauses
to reach the correct interpretation.  Luckel, 819 S.W.2d at 461.  The
deed at issue here provides guidance as to what the parties intended.  While
the granting clause grants a 1/16 interest in the minerals, the Asubject to@ clause covers and includes one half (1/2) of all
the oil royalty and gas rental or royalty due and to be paid under the term of
said lease.  The Asubject to@ clause shows the intent to convey a full 1/2 of all
royalty and gas rental due under the terms of the lease.  This indicates that
the grantors understood that a 1/8 royalty was what they owned and they were
giving 1/2 of that to the grantees.  








It is also
clear that the future lease clause under the Bolleter deed provided that the
oil, gas and mineral privileges would be owned by the grantors, Romulo Salinas
and Nicanora Rodriguez Salinas, as well as Bolleter.  The future lease
provision expresses the parties= intent that they jointly own the minerals, 1/2
each.  And the language in the future lease provision describing A1/2 of 1/8 or 1/16" further confirms that the grantors thought
that the 1/8 royalty interest was all that they owned.  Thus, by granting a
1/16th interest, the grantors were conveying 1/2 of what they owned on the
existing as well as any potential future leases.      

By
construing the deed pursuant to the rules relevant to the construction of these
types of deeds, as outlined by the Texas Supreme Court, we conclude that the
Salinases conveyed 1/2 of their interest through the Bolleter deed.  The
parties agree and concede that Salinas and Rodriguez conveyed a 1/2 mineral
interest to Woods two years later.  Salinas then had no mineral interest
remaining when the heirs executed the deed to Pedro Flores in 1953.  Thus, the
1953 conveyance included only surface interest.  Therefore, we hold that
Salinas and Rodriguez had previously conveyed all of their mineral interests
before they executed the deed to Pedro Flores in 1953.  We overrule issue one. 








By issue
two, the Hernandezes argue that we should construe the document against the
scrivener because Romulo Salinas and Nicanora Rodriguez were unable to sign
their names to the deed and signed with an AX.@  We first note that we have no idea who the scrivener of the deed
was.  Deeds are usually prepared by the grantor or by a scrivener or under his
direction.  McMahon v. Christmann, 303 S.W.2d 341,346 (Tex. 1957).  In
this case, the grantors were Romulo Salinas and his wife, Nicanora Rodriguez De
Salinas.  And we also note that only Nicanora R. De Salinas signed with an AX.@  Her husband did not.  Further, we will not apply
this secondary canon of construction to this deed because we have not found the
deed ambiguous.  We look within the four corners of the deed.  We overrule
issue two.  

The Hernandezes
argue by their third issue that the summary judgment should be reversed because
the trial court considered extrinsic evidence in interpreting the Bolleter Deed. 
An appellate court presumes that, in a matter tried without a jury, a trial
court disregards any incompetent evidence and considers only competent
evidence.  Garza v. Prolithic Energy Co. L.P., 195 S.W.3d 137, 147 (Tex.
App.–San Antonio, pet. denied).  Further, some of the evidence that the Hernandezes
suggest was extrinsic was ultimately necessary for the trial court to conclude
whether any interest in the minerals remained.  For instance, at various
points, the Hernandezes claimed that they owned between 1/2 and 7/8 of the
minerals in and under the subject land.  Thus, in order to obtain summary
judgment on its claim that the Hernandezes owned nothing, it was necessary for
El Paso to introduce evidence in the chain of title to establish that the Salinases
did not retain any mineral interest at the time the surface was conveyed to the
Pedro Flores.  This evidence was outside the Bolleter deed.  For both reasons,
we overrule issue three.  








By issue
four, the Hernandezes argue that the trial court erred in granting summary
judgment in favor of El Paso based on the expert opinion of Lee S. Gill.  Gill=s title opinions were included as summary judgment evidence with
respect to El Paso=s traditional motion for summary judgment.  A title
opinion, issued in 2002, concluded that Flores acquired his interest in the
land from the heirs of Romulo and Nicanora Salinas.  Gill opined that Romulo
and Nicanora Salinas sold all of their mineral interest in the subject land
during their lifetime.  Thus, the opinion suggests that Pedro Flores could not
have acquired a mineral interest in the land from the Salinas heirs.  The Hernandezes
argue that expert testimony regarding the construction of an unambiguous deed
is a pure question of law for the court and the experts are not permitted to
testify regarding their opinions as to pure questions of law.  See Upjohn
Co. v. Rylander, 38 S.W.3d 600, 611 (Tex. App.–Austin 2000, pet. denied). 
As previously stated, we presume in a matter tried without a jury, a trial
court disregards any incompetent evidence and considers only competent
evidence.  Garza v. Prolithic Energy Co. L.P., 195 S.W.3d at 147.  To
reverse a judgment for error in either the admission or exclusion of evidence,
a party must show that the error probably resulted in an improper judgment.  Tex. R. App. P. 44.1.  We do not know
if the trial court considered the Gill affidavit or not in granting summary
judgment in favor of El Paso.  We will presume, without deciding the issue of
whether the Hernandezes objections were properly overruled, that the trial
court considered only admissible evidence.  We overrule issue four.  

The Hernandezes
argue in issue five that they have shown that the Bolleter deed is unambiguous,
but if we determined that there was an ambiguity then there is a fact issue for
the jury.  We agree with both parties that the Bolleter deed is not ambiguous. 
Therefore, we overrule issue five.








By their
sixth issue, the Hernandezes claim that El Paso failed to meet its burden as
there is a genuine issue of material fact regarding their claims pertaining to
damage to the surface estate.  In their pleadings, the Hernandezes alleged that
El Paso had trespassed on the surface of the property and had committed waste
and surface damage, entitling them to damages.  In our review of El Paso=s no-evidence motion for summary judgment, it does not appear that El
Paso moved for a noBevidence motion for summary judgment with respect to
damages to the surface estate.  Therefore, we look only to the traditional
motion for summary judgment, the evidence supporting it and any controverting
evidence filed by the Hernandezes to determine whether El Paso has proven its
right to summary judgment as a matter of law with respect to the claim of
trespass and damage to the surface estate.  

El Paso
contends that when the mineral leases were assigned to it, the conveyance was
separate from the surface land.  According to El Paso, the mineral leases gave
El Paso the dominant estate, providing it the right to use as much of the
premises and in a manner reasonably necessary to effectuate the purpose of the
lease.  Additionally, El Paso argues that the Hernandezes signed surface damage
waivers, expressly allowing for the use of the surface.  

As proof,
El Paso submitted the affidavit of James F. Cohn.  The Hernandezes objected to
his affidavit as conclusory.  Cohn averred that he observed the surface based
on visits to the location and saw no instances where ordinary care had not been
used.  He said that there had been no use of the surface beyond that which was
reasonable and necessary to operate the three wells that were being operated on
the property.  He stated that the property had been improved by the
installation of a road providing access to the property.  The record also
contains three surface use settlement agreements where, in consideration of
$6,000, the Hernandezes released El Paso from all claims of loss, damage, or
injury to the property arising out of the installation, operation or removal of
all facilities related to the principal facility.  The waiver did not, however,
apply to future loss caused by negligence or willful misconduct. 








The Hernandezes
point to the affidavit of Yolanda Hernandez as controverting evidence that
would create a fact issue.  Moreover, they argue that El Paso has not
established its right to summary judgment as a matter of law because the Cohn
affidavit is conclusory and the releases expressly disclaim Acoverage of future negligence.@   

Summary judgment
based on the uncontroverted affidavit of an interested witness is proper if the
evidence is clear, positive, direct, otherwise credible, free from
contradictions and inconsistencies and could have been readily controverted.  Tex. R. Civ. P. 166a(c).  The mere
fact that an affidavit is self serving does not necessarily make it improper
summary judgment evidence.  Trico Techs. Corp. v. Montiel, 949 S.W.2d
308, 310 (Tex. 1997).  

Here, Cohn
was on site and testified that he observed no use upon the property that was
unreasonable or unnecessary.  Yolanda Hernandez however, filed an affidavit and
attached a letter from Cohn to her father as controverting evidence.  In her
affidavit, she avers that Cohn=s factual representation is untrue and conflicts
with a letter he had previously written to her father wherein he discusses Athe damages associated with the recent installation of a gas lift
pipeline@ and El Paso offered to pay A$1.00 per linear foot for that section of pipe between pads for a total
settlement of $1,414.00.@  The Hernandezes=s affidavit
explains that they did not accept El Paso=s offer.








 El Paso
argues in its brief that the letter does not describe any negligent act and
that the installation of gas pipeline is within the scope of surface use
agreements and consideration was already paid for all such facilities.  El Paso
also argues that the surface lease agreements unambiguously cover all
activities from installation to abandonment.  However, the summary judgment
evidence presented by the Hernandezes does indicate that El Paso was willing to
pay some amount beyond what the surface agreement allowed.  The requisites to
prove negligence of a mineral lessee are the same as for any other tortfeasor. See
Keeton & Jones, Tort Liability and the Oil and Gas Industry, 35 Texas L. Rev. 1, 12 (1956).  But it was
El Paso=s burden, as the movant, to establish as a matter of
law that it was not negligent with respect to damages to the surface estate. 
Regardless of whether or not Cohn=s affidavit was clear, positive and direct, the
Hernandezes=s summary judgment evidence raised a fact issue with
respect to the surface damage claim.  We sustain issue six.

By
appellant=s seventh issue, the Hernandezes argue that the
trial court erred in awarding attorney=s fees.  El Paso urges it is entitled to attorney=s fees pursuant to section 37.009 of the Texas Civil Practice and
Remedies Code.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 37.009.  The Hernandezes contend that title
disputes are governed by chapter 22 of the property code and attorney=s fees are not available.  See EOG Res. v. Killam Oil Co., 239
S.W.3d 293, 304 (Tex. App.–San Antonio 2007, pet. denied).  Because we are
reversing and remanding a portion of the case for a factual determination, we likewise
reverse and remand to the trial court to reconsider what award, if any, is
appropriate.  See Neely v. West Orange-Cove Consol. Ind. School Dist.,
176 S.W.3d 746, 799 (Tex. 2005).  The Hernandezes= seventh
issue is sustained.

V.  Conclusion








We affirm
the trial court=s judgment that the Hernandezes own no right to the
mineral interests at issue; and the trial court correctly granted summary
judgment on this ground.  We reverse and remand the grant of summary judgment
with respect to the surface damage claim and the award of attorney=s fees.

 

                                                                                        ROSE
VELA

Justice

Delivered and filed the

14th day of April, 2011.